Morrell N. JONES, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–0611–CR–536.

Court of Appeals of Indiana.

May 15, 2007.

---

Charles W. Lahey, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Morrell Jones appeals the denial of his motion to suppress statements he made to a polygraph examiner, his probation officer, and a police detective. We affirm.

### Issue

Jones raises two issues, which we consolidate and restate as whether the trial court properly denied his motion to suppress.

## Facts

In the spring of 2005, Jones was apparently adjudicated a delinquent child for what would have been Class B felony child molesting if committed by an adult.[1] Prior to sentencing, Jones was ordered to submit to a psychosexual evaluation.

Part of that evaluation included a polygraph examination. During the examination, Jones denied having sex with any other juveniles. At the conclusion of the polygraph examination, Jones was informed that he had failed it. Jones then attempted to correct the "failure" by saying that after he turned eighteen he had had sex with two girls who were under the age of sixteen. The polygraph examiner told Jones that he should report the sexual activity to his probation officer, and Jones did so. Jones was later taken into custody and was eventually sentenced on the juvenile adjudication. After he was sentenced, Detective Kenneth Kahlenbeck questioned Jones about the sexual activity, and Jones admitted to it.

On December 13, 2005, Jones was charged with two counts of Class C felony sexual misconduct with a minor. Jones filed a motion to suppress the statements made to the polygraph examiner, the probation officer, and Detective Kahlenbeck. This motion was denied, and Jones pled guilty. According to the terms of his plea agreement, Jones reserved the right to appeal the denial of his motion to suppress. Jones now appeals.

## Analysis

 Jones argues that the trial court improperly denied his motion to suppress. The denial of a motion to suppress is reviewed in a manner similar to other sufficiency matters. *Richardson v. State*, 848 N.E.2d 1097, 1100 (Ind.Ct.App.2006), *trans. denied.* "We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion." *Id.* We do not reweigh the evidence and consider the conflicting evidence most favorable to the trial court's ruling. *Id.* at 1100–01. "However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we also consider the uncontested evidence favorable to the defendant." *Id.* at 1101. We will affirm the denial if it is sustainable on any legal grounds apparent in the record. *Id.*

 Jones argues that his statements to the polygraph examiner, the probation officers, and Detective Kahlenbeck were obtained in violation of his *Miranda* rights. In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court held that when law enforcement officers question a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way," the person must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." When determining whether a person was in custody or deprived of his or her freedom, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest. *Luna v. State*, 788 N.E.2d 832, 833 (Ind.2003) (quotations omitted). We examine whether a reasonable person in similar circumstances would believe he or she is not free to leave. *Id.* Only when the officer, by means of physical force or show of authority, has in some

---

1. The details of this offense are largely unknown and are not relevant to today's decision.

way restrained the liberty of a citizen may we conclude that a "seizure" has occurred. *Id.* (quotation omitted). "Thus, the initial *Miranda* inquiry is whether the defendant was 'in custody' at the time of questioning." *Brabandt v. State,* 797 N.E.2d 855, 861–62 (Ind.Ct.App.2003).

■ Regarding Jones's statements to the polygraph examiner and the probation officer, we conclude that Jones was not in custody when the statements were given. First, at the suppression hearing, Jones testified that his grandmother took him to the polygraph examination, which was held in "offices of some kind." Tr. p. 10. Jones testified that neither a probation officer nor a police officer was with him. Jones also stated that the polygraph examiner told Jones that he was not a police officer. Further, Jones testified that he was not in custody at that time. Although Jones was participating in the polygraph examination as part of a psychosexual evaluation performed pursuant to a court order prior to sentencing, Jones was not formally arrested or restrained in a manner similar to a formal arrest. We cannot conclude that a reasonable person under similar circumstances would feel that he or she was not free to leave.

Further, Jones relies on *Estelle v. Smith,* 451 U.S. 454, 468, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981), for the proposition that "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him. . . ." Indeed, the Supreme Court held, "The considerations calling for the accused to be warned prior to custodial interrogation apply with no less force to the pretrial psychiatric examination at issue here." *Estelle,* 451 U.S. at 467, 101 S.Ct. at 1875. Importantly, however, *Estelle* still requires *custodial* interrogation,

and Estelle was in custody in the county jail when the exam was ordered and when it was conducted. *Id.,* 101 S.Ct. at 1875. Unlike Estelle, Jones was not in custody when he took the polygraph examination. *Estelle* is inapposite to these facts.

■ Although the timeline is unclear, we also conclude that Jones was not in custody when he reported the sexual activity to his probation officer. Jones went to his probation officer because he mistakenly thought he had to be in court and he always met with his probation officer before court hearings. Jones's probation officer did not ask him to come to the office to discuss the incidents. Further, after Jones reported the sexual activity to his probation officer, Jones returned to school. *See* Tr. p. 13. Finally, Jones testified that when he reported the incidents to his probation officer he was not in custody.

In *Brabandt v. State,* 797 N.E.2d 855, 862 (Ind.Ct.App.2003), we concluded that a defendant who reported criminal activity to his probation officer was not in custody where the record contained no evidence that he was behind locked doors or restrained in any fashion while attending his probation meeting. Likewise, when Jones reported the incident to his probation officer, he had not been formally arrested or restrained to the same degree as a formal arrest. Jones was not in custody when he reported the sexual activity to his probation officer.

■ Regarding Jones's statement to Detective Kahlenbeck, it is clear that he was in custody. Jones was being detained in a juvenile facility and was handcuffed. Although Jones was Mirandized, he argues that Detective Kahlenbeck used an improper "question first" procedure. Jones likens the facts of this case to those in *Missouri v. Seibert,* 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).

In *Seibert*, the defendant was awakened at 3 a.m., taken to a police station, left alone in an interview room for fifteen to twenty minutes, and questioned for thirty to forty minutes until she confessed. *Seibert*, 542 U.S. at 604–05, 124 S.Ct. at 2606. After a twenty-minute break, the interrogating officer turned on a tape recorder and Mirandized Siebert for the first time, at which point she again confessed. The *Siebert* court concluded, "Because the question-first tactic effectively threatens to thwart *Miranda's* purpose of reducing the risk that a coerced confession would be admitted, and because the facts here do not reasonably support a conclusion that the warnings given could have served their purpose, Seibert's postwarning statements are inadmissible." *Id.* at 617, 124 S.Ct. at 2613.

The facts before us are unlike those in *Seibert* for two reasons. First, Jones does not appear to argue that he was interrogated by Detective Kahlenbeck, that he confessed, that he was then Mirandized, that he then confessed again, and that it was the second confession that the State was seeking to use against him. Instead, he seems to argue that Detective Kahlenbeck "advised Jones that the Detective knew about the statement Jones made to the polygraph examiner." Appellant's Br. p. 6. Jones contends that he admitted to the remarks because it was pointless to deny something he had already stated. Even if Detective Kahlenbeck did advise Jones that he was aware of Jones's prior statements to the polygraph examiner and the probation officer, such a statement is not the same as a lengthy interrogation by police officers to obtain a confession without first Mirandizing the individual. As we have already concluded, those two earlier statements were not the result of "custodial interrogation" and were not governed by *Miranda.*

Moreover, Jones's own testimony does not support the conclusion that he was interrogated prior to being Mirandized. At the suppression hearing, the following questioning took place between Jones and his attorney:

Q. All right. And were you put in a room then?

A. Yeah.

Q. What did the detective tell you then?

A. He just told me that I didn't have to say nothing but most people cooperate.

Q. Okay. Did he tell you that he wanted to ask you about these two girls?

A. Right.

Q. Did he indicate to you that he knew that you had already made a statement and admitted involvement, having sex with these two women, to the polygraph examiner?

A. Yes.

Q. At some point, did he give you your Miranda warnings?

A. Yeah. He told me that I had the right to remain silent.

Q. All right. Is that the first thing he did, or did he talk to you for a while beforehand?

A. I think he talked to me. I'm not sure. It was a while back. I think he did. He told me about my Miranda rights, though.

Q. All right.

A. And that's when he told me I had the right to remain silent.

\* \* \* \* \*

Q. All right. Did it occur to you that it didn't make any sense for you to now to try to deny having sex with these two women, after you had already admitted it to both the poly-

graph examiner and your probation officer?

A. Right. Because I already—They already knew that I had admitted to it. So it would just be pointless.

Tr. pp. 15–17. Further, in his brief, Jones suggests that he signed a "waiver form." Appellant's Br. p. 8. It is undisputed that Jones was Mirandized, and Jones's testimony simply does not establish that he was improperly interrogated prior to being Mirandized. Thus, Jones has not established that Detective Kahlenbeck's actions amounted to an improper "question first" procedure as described in *Seibert.*

 Jones also argues that his statements were involuntarily made because he submitted to the polygraph examination as the result of a court order making it pointless to subsequently lie about the statements made during the polygraph examination. "The admissibility of an incriminating statement is not determined solely by application of the *Miranda* rules." *Kelley v. State,* 825 N.E.2d 420, 430 (Ind.Ct.App.2005). When a defendant is not in custody, an admission may be excluded if it was involuntarily made. *Id.*

A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence. When reviewing a challenge to the trial court's decision, we do not reweigh the evidence but examine

the record for substantial, probative evidence of voluntariness.

*Id.* at 430–31 (citations and footnote omitted). Further, "The general obligation to appear and answer questions truthfully does not convert otherwise voluntary statements into compelled statements." *Brabandt,* 797 N.E.2d at 863–64. "The Fifth Amendment speaks of compulsion; it does not preclude a witness from testifying voluntarily in matters that may incriminate him." *Id.* at 864.

Jones points to no physical abuse, psychological intimidation, or deceptive interrogation tactics, other than the alleged "question first" procedure, that may have been used to overcome his free will. That Jones submitted to a polygraph examination as part of a court-ordered psychosexual exam does not mean that his confession was obtained by violence, threats, promises, or other improper influences so as to render it involuntarily made.

In fact, Jones testified that he initially lied to the polygraph examiner about the sexual encounters. Only upon being informed that he failed the test did Jones tell the truth. He stated:

I knew if I had failed it, it was definitely going to look bad back at JJC. So I ended up telling the truth. I brung [sic] it up to see if it would make anything better, but the polygraph was already finished. So I didn't really have to do that.

Tr. p. 11. This was a pragmatic decision by Jones to minimize his punishment,[2] not a coerced confession. Likewise, that Jones felt it was "pointless" to deny the sexual encounters to Detective Kahlenbeck because he had previously admitted to such does not render those statements in-

---

2. Jones argues, "Any refusal to attend or answer questions would have subjected him to immediate incarceration." Appellant's Br. p. 9. Jones then cites pages eight through forty-one of the transcript. However, other than Jones's own fear of increased incarceration, there is no evidence in the record to support this claim.

voluntary. Tr. p. 17. Jones's statements were not involuntarily made.

### Conclusion

The trial court properly denied Jones's motion to suppress the statements he made to the polygraph examiner, his probation officer, and to Detective Kahlenbeck. We affirm.

Affirmed.

NAJAM, J., and RILEY, J., concur.