Richard Edward FARIS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 22A05–0808–CR–471.

Court of Appeals of Indiana.

Feb. 27, 2009.

Transfer Denied April 9, 2009.

Stanley E. Robinson, Jr., New Albany, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Matthew Whitmire, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Richard Faris appeals the trial court's denial of his motion to suppress. We affirm.

### Issue

The sole issue is whether the trial court properly concluded that Faris's inculpatory statement to police was voluntarily made.

### Facts

In January 2007, police interviewed Faris's four-year-old daughter K.T. She told police that Faris had touched her vagina and had inserted a toy into her vagina. On February 21, 2007, Faris went to the New Albany police station, accompanied by his mother, in response to a police request to speak with him. He was interviewed by two officers in a room measuring approximately 8' × 11'. At some point he was given his Miranda rights, and he signed a waiver of them. The officers began recording the interview after about an hour and fifteen minutes had elapsed. The entire interview took no more than two hours. He eventually admitted touching his daughter's "pee-pee" and putting a toy inside her vagina. P.C. Affidavit p. 2. As promised by one of the officers, Faris was permitted to go home with his mother after the interview was completed. On March 14, 2007, the State charged Faris with one count of Class A felony child molesting and one count of Class C felony child molesting.

Around the same time as the police interview, Faris was examined by a psychologist who determined that Faris had an IQ of 62. In response to a request by Faris's attorney, he was further evaluated by a psychiatrist and a different psychologist, both of whom reported that he was not competent to stand trial due to mental retardation. The psychologist, Dr. Heather Henderson–Galligan, found that Faris had a full-scale IQ of 52. This placed him well below the normal range of 84–116 and into the category of moderately mentally retarded. Based on Faris's mental disability, counsel filed motions to have him de-

clared incompetent to stand trial and to suppress the statement he gave to police.

On December 21, 2007, the trial court held a hearing on both motions. At the outset, the State stipulated that Faris was incompetent to stand trial, and then argued that due to Faris's incompetency the trial court should not rule on the motion to suppress. Faris's attorney disagreed, and the trial court proceeded with the suppression hearing. Dr. Henderson–Galligan testified that Faris, who has the approximate mental abilities of a second grader, would not have been able to understand the *Miranda* waiver of rights form that he signed. The officers who interviewed Faris testified that they were unaware of his mental disability and that it was not evident in his demeanor or manner of speaking.[1]

After the hearing, the trial court entered an order finding Faris incompetent to stand trial and committing him to the care of the Indiana Division of Mental Health and Addiction. The trial court did not issue a ruling on the motion to suppress. According to the chronological case summary ("CCS"), in May 2008 the trial court received reports from two doctors who found Faris competent to stand trial. However, there is no official entry in the CCS that Faris has yet been found competent to stand trial by the trial court.[2] Nevertheless, in July 2008 Faris's attorney filed a motion requesting a ruling on the motion to suppress. On July 23, 2008, the trial court denied the motion to suppress.

The trial court certified its ruling for interlocutory appeal and we have accepted jurisdiction.

**Analysis**

We acknowledge that the procedural posture of this case is unusual. The State suggests in a footnote that we ought to dismiss this appeal because Faris apparently has not yet officially been declared competent to stand trial. The trial and conviction of an incompetent defendant is a denial of federal due process and a denial of a state statutory right as well. *Brewer v. State,* 646 N.E.2d 1382, 1384 (Ind.1995) (citing *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) and Ind. Code § 35–36–3–1). Conversely, there are due process limitations upon how long a defendant who has been ruled incompetent to stand trial, and whose incompetency may be long-lasting or permanent, may be held to answer to a criminal charge. *See State v. Davis,* 898 N.E.2d 281, 289–90 (Ind.2008). Our supreme court so far only has applied this holding where "pretrial confinement has extended beyond the maximum period of any sentence the trial court can impose . . . ." *Id.* at 290. Here, Faris is charged with a Class A felony, which carries a maximum sentence of fifty years. *See* I.C. § 35–50–2–4. Thus, even under *Davis's* holding, Faris could potentially be detained for decades, even if he never is competent to stand trial.[3] A ruling on this motion to suppress a key portion of the State's evidence may assist in

---

1. Neither a recording of Faris's statement nor a transcript of it were introduced into evidence and, as such, we have no way of reviewing the statement ourselves. Where the admissibility of a statement to police is at issue, it is the best practice to always introduce the statement into evidence to assist judicial review of a motion to suppress.

2. It does appear Faris was returned to the custody of the local jail, and there have been

hearings regarding a reduction of bond for him, suggesting that Faris's case is now proceeding to trial and he is no longer considered incompetent.

3. Faris also may fall under an exception to *Davis's* holding, namely, any conviction for child molesting would require not only punishment, but also registration as a sex offender. *See Davis,* 898 N.E.2d at 289.

expediting the resolution of the case, regardless of Faris's competency. We will address the case on the merits.

■ We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Jones v. State,* 866 N.E.2d 339, 342 (Ind.Ct.App.2007), *trans. denied.* That is, we must determine whether substantial evidence of probative value supports the trial court's denial of the motion. *Id.* We do not reweigh the evidence and will consider any conflicting evidence in a light most favorable to the trial court's ruling. *Id.* Unlike a typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we also consider any uncontested evidence that is favorable to the defendant. *Id.* "We will affirm the denial if it is sustainable on any legal grounds apparent in the record." *Id.*

■ We first note that there is uncontested expert testimony in the record to the effect that Faris lacked the ability to comprehend the waiver of *Miranda* rights form that he signed. Neither the State nor Faris, however, directly address whether Faris was entitled to be advised of his *Miranda* rights, and was required to waive them, at any time while speaking with the police officers. *Miranda's* safeguards only apply if a suspect is both in custody and subjected to interrogation. *P.M. v. State,* 861 N.E.2d 710, 713 (Ind.Ct. App.2007). We conclude the record clearly demonstrates that Faris was not in custody when he confessed to police.

■ For *Miranda* purposes, when determining whether a person was in custody or deprived of his or her freedom, the ultimate inquiry is whether there is a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest. *Jones,* 866 N.E.2d at 342. "We examine whether a reasonable person in similar circumstances would believe he or she is not free to leave." *Id.* It is only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that the person has been placed in custody. *Id.* at 342–43.

The circumstances here are quite similar to those in *Luna v. State,* 788 N.E.2d 832 (Ind.2003). In *Luna,* police asked a molestation suspect to come to the police station to discuss allegations against him. The suspect drove himself to the police station, where he was interviewed in an office, behind closed doors, by two officers. The officers told the suspect that he was free to leave at any time. After about an hour of interrogation, during which the suspect confessed, he was in fact allowed to go home. Our supreme court concluded, "a person who goes voluntarily for a police interview, receives assurances that he is not under arrest, and leaves after the interview is complete has not been taken into 'custody' by virtue of an energetic interrogation so as to necessitate *Miranda* warnings." *Luna,* 788 N.E.2d at 834.

Here, as in *Luna,* Faris voluntarily went to the police station, accompanied by his mother. There is no indication in the record that he was ever told he was under arrest. Instead, Faris was assured by the officers that regardless of what was discussed, he would be allowed to go home after they finished talking. The officers kept that promise. The entire interrogation lasted two hours, which while slightly longer than in *Luna* still is not an excessive amount of time. Finding no appreciable difference between this case and *Luna,* we conclude Faris was not in custody when he spoke to the officers and, therefore, no *Miranda* warnings or waiver of those rights were necessary. We emphasize that "[w]hether a person was in custody at a given time depends not upon the subjec-

tive views of either the interrogating officers or the subject being questioned but upon the 'objective circumstances.'" *Loving v. State,* 647 N.E.2d 1123, 1125 (Ind. 1995). Thus, Faris's mental disability, and whether this might have affected how he perceived the situation, is not a relevant consideration on the issue of custody.

▇▇▇▇ Although Faris was not in custody, his statement may be excluded if it was made involuntarily, pursuant to the Fourteenth Amendment. *See Brabandt v. State,* 797 N.E.2d 855, 863 (Ind.Ct.App. 2003). To be voluntary, a defendant's statements must not have been induced by violence, threats, promises, or other improper influence. *Id.* "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473(1986). "Stated another way, a defendant's mental state is not enough to render a confession inadmissible in the absence of coercive police activity." *Smith v. State,* 689 N.E.2d 1238, 1248 (Ind.1997). In Indiana, the State bears the burden of proving beyond a reasonable doubt that a defendant's confession was voluntarily given in light of the totality of the circumstances. *Miller v. State,* 770 N.E.2d 763, 767 (Ind.2002). Many factors may be considered, including the crucial element of police coercion; the length of the interrogation, its location,

and its continuity; and the defendant's maturity, education, physical condition, and mental health. *Id.* (quoting *Withrow v. Williams,* 507 U.S. 680, 693, 113 S.Ct. 1745, 1754, 123 L.Ed.2d 407 (1993)).

Faris's mental health, particularly his documented moderate mental retardation, obviously weighs in favor of a finding that his statement was not voluntarily given. On the other hand, we already have noted that the interrogation in this case was not particularly lengthy. Most importantly, however, there simply is insufficient evidence that the officers who interrogated Faris were aware of his mental disability, or in any way attempted to take advantage of it. Both officers present testified that they were unaware of any mental retardation on Faris's part; rather, there was nothing out of the ordinary to them in his demeanor or manner of speaking.[4] One of the officers testified that if she had suspected Faris had a mental disability, she would have terminated the interview and sought further guidance on how to proceed from the prosecutor's office. This evidence fails to establish that Faris's statement was the result of police coercion. To the extent Faris is suggesting that the officers should have noticed his mental disability while questioning him, this is a request to reweigh evidence that we cannot undertake. Thus, for due process purposes Faris's statement was voluntarily given, regardless of his mental disability.[5]

---

4. Although the statement is not in the record, it appears from the probable cause affidavit that Faris referred to K.T.'s vagina as her "pee-pee." P.C. Affidavit p. 2. This would be an odd term for a twenty-eight year old man to use, and a potential red flag, but we cannot say this necessarily alerted the officers to Faris's mental disability.

5. If this had been a case in which *Miranda* warnings in fact were necessary, we would have been required to separately inquire into

whether Faris knowingly and intelligently waived his rights. His mental disability might have played a larger part in such an analysis. *See U.S. v. Jennings,* 491 F.Supp.2d 1072, 1076–78 (M.D.Ala.2007) (holding that although mentally disabled defendant voluntarily waived his *Miranda* rights, he did not knowingly and intelligently waive them, in light of undisputed expert testimony that defendant could not have understood those rights or the consequences of waiving them).

## Conclusion

This case required us to perform a delicate balance between ensuring that mentally disabled persons are not improperly denied their constitutional rights and not penalizing police for non-coercive conduct. Here, where Faris's interrogation did not take place in a custodial setting and the officers questioning him were unaware of his disability and did not engage in coercion, we cannot say as a matter of law that his confession was involuntarily given. We affirm the denial of Faris's motion to suppress.

Affirmed.

BAILEY, J., concurs.

FRIEDLANDER, J., concurs in result.