# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MARK I. COX**
The Mark Cox Law Office, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN SCOTT HARTMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 68A01-1106-CR-264 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE RANDOLPH CIRCUIT COURT
The Honorable Jay L. Toney, Judge
Cause No. 68C01-1002-MR-17

**March 2, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Judge**

In this interlocutory appeal, Brian Scott Hartman ("Hartman") appeals the denial of his motion to suppress a statement he made to the police regarding his involvement in the death of his father, Brian Ellis Hartman ("Father").

We affirm.

## ISSUE

Whether the trial court erred in denying Hartman's motion to suppress.

## FACTS

On February 22, 2010, while Hartman was incarcerated at the Randolph County Jail on burglary charges, Randolph County Sheriff's Department Detective Douglas Fritz interviewed Hartman about Father. Detective Fritz advised Hartman of his *Miranda* rights, and Hartman requested to speak with a specific attorney. Detective Fritz immediately ended the interview.

The following day, Randolph County Sheriff's Department Detective Tom Pullins executed two search warrants on Hartman's property and found Father's dead body. Because Detective Pullins routinely informs a person when his property has been searched, the detective went to the Randolph County Jail, read the search warrants to Hartman, and asked him if he had any questions. Hartman asked if the detective had searched the property yet and if he had found anything. Detective Pullins asked Hartman "if he was indicating that he wanted to speak with [the detectives]." (Tr. 16). Hartman responded that he did want to speak with them. Detective Pullins took Hartman to an

2

interview room and reread him his *Miranda* rights. Hartman indicated that he understood his rights and then waived his rights and made an incriminating statement to the detectives about his involvement in Father's death.

The State charged Hartman with both Murder and class C felony Assisting Suicide. Hartman filed a motion to suppress his incriminating statement, which the trial court denied. Specifically, the trial court concluded that Hartman initiated the conversation when he asked the detectives if they had searched the house yet. Hartman appeals.

### DECISION

Hartman argues on appeal that the trial court erred in denying his motion to suppress. Specifically, he contends that when the detective read him the search warrants and asked him if he had any questions, the detective was, in effect, re-interrogating him in violation of his request for counsel the previous day. The State responds that there is no violation in this case because it was Hartman who initiated further communication with the police when he asked the detective questions about the search warrant and then told the detective that he wanted to speak with him.

We review the trial court's denial of a motion to suppress in a manner similar to other sufficiency matters. *Faris v. State*, 901 N.E.2d 1123, 1126 (Ind. Ct. App. 2009), *trans. denied*. That is, we must determine whether substantial evidence of probative value supports the trial court's ruling. *Id.* In making this determination, we do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to

3

the trial court's ruling. *Id.* We also consider any uncontroverted evidence in the defendant's favor. *Id.* If the denial is sustainable on any legal grounds apparent in the record, we will affirm. *Id.* In essence, we look at the totality of the specific facts and circumstances of the situation to determine the admissibility of the statement.

When an individual in custody invokes his right to an attorney, all questioning must cease, and further interrogation may not take place until counsel has been made available or the accused initiates further conversation. *Edwards v. Arizona,* 451 U.S. 477, 484-85 (1981); *Owens v. State,* 732 N.E.2d 161, 164 (Ind. 2000). Future interrogation is allowed only when it is shown by a preponderance of the evidence that the accused initiated further discussions and knowingly and intelligently waived the right to counsel he had earlier invoked. *Smith v. Illinois*, 469 U.S. 91, 95 (1984).

Interrogation has been defined as a process of questioning by law enforcement officials which lends itself to obtaining incriminating statements. *S.D. v. State*, 937 N.E.2d 425, 429 (Ind. Ct. App. 2010). Pursuant to *Miranda*, "interrogation" includes express questioning and words or action on the part of police that the police know are reasonably likely to elicit an incriminating response from the suspect. *White v. State*, 772 N.E.2d 408, 412 (Ind. 2002) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). The United States Supreme Court has held that the safeguards outlined in *Miranda* also apply to the functional equivalent of interrogation by the police. *Id.* at 301-02.

Here, Detective Pullins, as is his practice, simply read the search warrants to Hartman and asked him if he had any questions. This was neither express questioning

4

nor words or action that the detective knew was reasonably likely to elicit an incriminating response from Hartman. Rather, it was Hartman who initiated further communication with the detective when he asked about the search warrant and told the detective that he wanted to speak with him.

Further, although the parties do not offer nor do we find any factually similar Indiana cases, *State v. Person*, 104 P.3d 976, 980-83 (Idaho Ct. App. 2004), is instructive. There, Ada County Sheriff's Department Detective Pat Schneider and Idaho State Police Department Detective Kevin Hudgens were questioning Person about a murder when Person invoked his right to counsel. Both officers immediately ceased questioning Person and left the room. A few minutes later, Detective Hudgens re-entered the room and read an arrest warrant to Person that informed him that he was suspected of murdering the victim. The detective told Person that if he wanted to tell the detectives anything, this was the time to do it. Person responded that he wanted to talk to the detectives and subsequently made an incriminating statement. Person filed a motion to suppress this statement, which the trial court denied. Specifically, the trial court concluded that the police had not re-initiated the interrogation but had appropriately contacted Person to inform him of the charge that he faced. The Idaho Court of Appeals affirmed this issue on appeal. *Id.* at 941.

Here, as in *Person,* Detective Pullins did not re-initiate the interrogation. Rather, Hartman initiated further communication by asking whether the search warrant had been served and whether anything had been found, and then told the detective that he wanted

5

to speak with him. Detective Pullins readvised Hartman of his *Miranda* rights, which Hartman said he understood, before Hartman made an incriminating statement, and Hartman waived these rights. The trial court did not err in denying Hartman's motion to suppress this statement.

Affirmed.

BAKER, J., and BAILEY, J., concur.