ATTORNEY FOR APPELLANT
Mark I. Cox
The Mark I. Cox Law Office, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED
May 31 2013, 11:09 am
CLERK
of the supreme court,
court of appeals and
tax court

No. 68S01-1305-CR-395

BRIAN SCOTT HARTMAN,                    *Appellant (Defendant),*

v.

STATE OF INDIANA,                    *Appellee (Plaintiff).*

Appeal from the Randolph Circuit Court, No. 68C01-1002-MR-17
The Honorable Jay L. Toney, Judge

On Transfer from the Indiana Court of Appeals, No. 68A01-1106-CR-264

**May 31, 2013**

**Dickson, Chief Justice.**

Facing charges of Murder and Assisting Suicide, the defendant filed a motion to suppress incriminating statements he made to a police detective in response to police inquiries, notwithstanding the defendant's prior request for counsel. The trial court denied his motion, and the defendant initiated this interlocutory appeal. The Court of Appeals affirmed. Hartman v. State, 962 N.E.2d 1273 (Ind. 2012). We grant transfer and reverse.

On Monday, February 22, 2010, the defendant, Brian Scott Hartman, was taken into custody on burglary charges. Detective Douglas Fritz of the Randolph County Sheriff's Department

initiated an interview with the defendant at the Randolph County Jail and asked questions about the defendant's father, Brian Ellis Hartman, who was missing at the time. Detective Fritz advised the defendant of his Miranda rights, and the defendant requested to speak with an attorney. Detective Fritz ceased questioning at that time.

The following afternoon, Detective Tom Pullins executed two search warrants at a residence in nearby Williamsburg, Indiana, and discovered the body of the defendant's father.[1] Early the following day, Wednesday, February 24, 2010, at approximately one o'clock in the morning, Detective Pullins had the defendant brought to the jail's intake area and informed him that "by law" the detective "had" to read him the search warrants. After Detective Pullins read the search warrants, he asked the defendant if he had any questions. In response, the defendant asked if the house had been searched and if anything had been found. Detective Pullins then asked whether the defendant wanted to speak with the detectives, and the defendant indicated that he did. The detective took the defendant to an interview room where he re-read the defendant his Miranda rights, after which the defendant indicated that he understood his rights and had no questions. The defendant then made incriminating statements to the detectives, essentially confessing his role in his father's death.

In the ensuing trial, the defendant moved the trial court to suppress his confession on the grounds that the statements were obtained as a result of an interrogation which took place after he had invoked his right to remain silent and consult with an attorney. In its order denying the motion to suppress, the trial court concluded:

> In the case at hand, more than a day had passed since the Defendant had been questioned. The Defendant was not taken to an interview room to have the Warrants read to him, but was in the intake area. That conversation was clearly not of a coercive nature, which might cause the Defendant to feel pressure to answer questions. Rather, it was the Defendant's conduct and questions which led to his giving the incriminating statement. He may have simply wanted to "come clean" and be truthful with the officers. He may have hoped to obtain favor from the authorities by providing helpful information. This is only speculation. What is clear is that the Defendant voluntarily chose to initiate this conversation and, regardless of his motivation, chose to give the incriminating statement. Therefore the Motion to Suppress must be denied.

---

[1] The record reflects that the defendant's father owned the property covered by the search warrant, and that the defendant lived in a pole barn on the property.

Appellant's App'x at 117.

On interlocutory appeal, the defendant asserts that the trial court erred in denying his motion to suppress because Detective Pullins, in violation of the Fifth Amendment,[2] reinitiated interrogation after he had invoked his right to counsel, and that the resulting confession is therefore inadmissible. The State contends that the detectives did not reinitiate interrogation of the defendant by reading him the search warrants and asking if he had any questions. Rather, they claim that it was the defendant who initiated a dialogue and indicated that he wished to speak with the officers.

The trial court's decision regarding admissibility of a confession or incriminating statement is controlled by determining from the totality of the circumstances whether the statement was given voluntarily, rather than through coercion or other improper influence so as to overcome the free will of the accused. Massey v. State, 473 N.E.2d 146, 147 (Ind. 1985). We review a trial court's denial of a motion to suppress in a manner similar to other sufficiency issues. Taylor v. State, 689 N.E.2d 699, 702 (Ind. 1997). There must be substantial evidence of probative value in the record to support the trial court's decision. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.* However, within this sufficiency review, we review all issues of law *de novo*, subject to the sole determination of this Court. *See* Griffith v. State, 788 N.E.2d 835, 839 (2003).

The Fifth Amendment grants to individuals, among other rights, the right to be free from self-incrimination. U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."). This provision applies to the states by virtue of the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6, 84 S. Ct. 1489, 1492, 12 L. Ed. 2d 653, 658 (1964). In Miranda v. Arizona, the United States Supreme Court outlined an additional prophylactic requirement, inherent in the privilege against self-incrimination, that an individual must be informed of his right to have counsel present during custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 469, 86 S. Ct. 1602, 1625, 16 L. Ed. 2d 694, 721 (1966) ("[T]he right to

---

[2] The defendant does not make any argument under the Indiana Constitution but relies wholly on the U.S. Constitution.

3

have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today."). When an individual in custody invokes his Fifth Amendment right to counsel, all interrogation must cease until an attorney is present, and the individual must be afforded the opportunity to speak with the attorney and have an attorney present at any further questioning. *Id.* at 474, 86 S. Ct. at 1628, 16 L. Ed. 2d at 723. However, if the individual initiates "further communication, exchanges, or conversations" with law enforcement, then the individual may be further interrogated without counsel present. Edwards v. Arizona, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378, 386 (1981). Furthermore, even if counsel is not immediately provided to an individual who requests it, the police "are free to inform the suspect of the facts of [a] second investigation as long as such communication does not constitute interrogation." Arizona v. Roberson, 486 U.S. 675, 687, 108 S. Ct. 2093, 2101, 100 L. Ed. 2d 704, 717 (1988) (citation omitted). Under Miranda, "interrogation" refers to "either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300–01, 100 S. Ct. 1682, 1689, 64 L. Ed. 2d 297, 308 (1980). The Court has defined the functional equivalent of express questioning as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S. Ct. at 1689–90, 64 L. Ed. 2d at 308 (footnote omitted). Such reasonable likelihood of eliciting an incriminating response must be determined from the suspect's perspective, rather than the intent of the police, because Miranda protections are intended as a layer of protection for the suspect against coercive police practices, "without regard to objective proof of the underlying intent of the police." *Id.* at 301, 100 S. Ct. at 1690, 64 L. Ed. 2d at 308.

The findings of fact, conclusions of law, and ruling by the trial court fail to reflect consideration of several uncontested factual matters. Regardless of his whereabouts in the police station house, the defendant remained in police custody, in a police-dominated atmosphere in which there are "inherently compelling pressures which work to undermine the individual's will to resist and compel him to speak where he would not otherwise do so freely." Miranda, 384 U.S. at 467, 86 S. Ct. at 1624, 16 L. Ed. 2d at 719. The longer an individual is in custody, the more the psychological pressures build. Although the defendant had been in custody for less than 48 hours at the time of the exchange, the uncertainty and stress of the situation was height-

ened due to the second factor—that the defendant had requested the assistance of counsel, and that counsel had not been provided to him.

In Maryland v. Shatzer, the Supreme Court refused to extend the Miranda and Edwards protections to cover situations where an accused has been released from custody for more than fourteen days and is then re-interrogated. Maryland v. Shatzer, 559 U.S. 98, 130 S. Ct. 1213, 175 L. Ed. 2d 1045 (2010). In so deciding, the Court stated that when a suspect has been released from custody and has returned to his normal life prior to the later attempted interrogation, there is little reason to believe that the suspect's willingness to talk has been coerced. *Id.* "He has likely been able to seek advice from an attorney, family members, and friends. And he knows from his earlier experience that he need only demand counsel to bring the interrogation to a halt; and that investigative custody does not last indefinitely." *Id.* at 107-08, 130 S. Ct. at 1221, 175 L. Ed. 2d at 1055 (footnote omitted).

Here, despite the defendant's request for counsel, he had not been provided the opportunity to consult with an attorney prior to the police approaching him to read the search warrants. Nor had he consulted with family members or friends, nor been released from custody. Further, there is nothing in the record showing his knowledge from his earlier experience that a demand for counsel would bring dealings with the police to a halt. In fact, the defendant's experience two days earlier, when his request for counsel was unproductive, could well have led him to the opposite conclusion—that a request for counsel would not be honored prior to further police dealings. This has the likely effect of increasing coercive pressure on the defendant.

In addition, we find significant the immediacy of the defendant's response to the detective's invitation to the defendant for questions. In its order denying the motion to suppress, the trial court stated:

> Following the reading of the Warrants, the Defendant was asked whether he had any questions. No other inquiries were posed to the Defendant at that time. The Defendant then chose to ask the Detectives whether they had performed the search, and whether they had found anything. It was *only at this point* that the Defendant was asked whether he wanted to speak with the Detectives, to which the Defendant replied that he did.

5

Appellant's App'x at 116 (emphasis added). From this passage, we understand the trial court to have found significant the passage of time between the police asking the defendant if he had any questions and the later point when the defendant asked about who performed the search. We disagree. This series of events is preserved on a video recording and included in the record of this case. The video reveals that the elapsed time between the police asking if the defendant had any questions and the defendant's inquiry about who performed the search consisted of only three seconds. This fact undermines the trial court's conclusion that the defendant "voluntarily chose to initiate this conversation." *Id.* at 117. To the contrary, it is clear that the defendant's inquiry was in direct response to the officer's question rather than a separate, independent initiation of further conversation by the defendant.

Furthermore, the early-morning timing of the detective's initiation of the conversation with the defendant strongly suggests that the defendant's willingness to converse with police notwithstanding his prior request for counsel, was likely the result of police coercion. The search warrants had been executed in the afternoon of February 23, 2010, yet the detectives did not approach the defendant, purportedly to read the search warrants, until one o'clock in the morning on February 24, 2010.

Also significant is the fact that there existed no requirement or justification that the warrants be read to the defendant where the warrants had already been executed and the search performed. In telling the defendant that he was required "by law" to read the already-executed warrants, the detective was engaging in a ploy that further supports our conclusion that the police were attempting to evade their obligation to cease questioning of a suspect who had unambiguously requested counsel.

Finally, although the defendant was re-read his Miranda rights before the detectives elicited the incriminating statements at issue, this fact has no bearing on our analysis. While an accused's knowing and voluntary resumption of dialogue with police following being re-read such warning is not constitutionally infirm when the accused himself reinitiates conversation, this is not so when conversation is reinitiated by police, as it was here. *See* Edwards, 451 U.S. at 484–85, 101 S. Ct. at 1884–85, 68 L. Ed. 2d at 386 ("[W]hen an accused has invoked his right to have

6

counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing *only* that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." (emphasis added)).  Any subsequent waiver of the right to counsel must be knowing and intelligent under the totality of the circumstances, Grimm v. State, 556 N.E.2d 1327, 1330 (Ind. 1990) (citing Oregon v. Bradshaw, 462 U.S. 1039, 1045, 103 S. Ct. 2830, 2834, 77 L. Ed. 2d 405, 412 (1983)), a requirement not met in this instance, for the reasons outlined above.  Thus, *even if* we were to find that it was the defendant, and not the police, who reinitiated conversation, the totality of the circumstances here was such that the defendant's subsequent waiver was not knowing and intelligent, and was therefore involuntary.  While subterfuge, trickery, and deception can be acceptable interrogation tactics, *see* United States v. Villapando, 588 F.3d 1124, 1128 (7th Cir. 2009) (quoting United States v. Kontny, 238 F.3d 815, 817 (7th Cir. 2001)), when an individual has invoked his right to counsel, it becomes all the more necessary to respect the fine line between constitutionally permissible interrogation techniques and impermissible police coercion.

### Conclusion

The totality of the circumstances involving the content, place, and timing of the communication by the police with the defendant, combined with the detective's immediate follow-up inquiry asking the defendant if he had any questions—all notwithstanding the defendant's prior invocation of his right to counsel—constituted impermissible questioning or its functional equivalent in contravention of the requirements established by Miranda, Edwards, and Innis.  The impingement upon the defendant's right to counsel requires suppression of the defendant's resulting statements.  We reverse the trial court's denial of the defendant's motion to suppress and remand for further proceedings consistent with this opinion.

Rucker, David, Massa, and Rush, JJ., concur.