**Eric Wade LASTER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 31A05–0904–CR–207.

Court of Appeals of Indiana.

Dec. 22, 2009.

**430**

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, James E. Porter, Deputy Attorney General of Indiana, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Eric Wade Laster appeals his convictions for two counts of Child Molesting,[1] a class A felony, and four counts of Child Molesting,[2] a class C felony. Laster argues that the trial court erred by admitting into evidence statements he made to police before and after receiving *Miranda*[3] warnings. Additionally, Laster contends that the aggregate sixty-four-year sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character. We find no error in the admission of his statements to the police. But given the nature of the offenses and Laster's character, we find the sentences imposed by the trial court to be inappropriate and revise his sentences as follows: thirty-six years on each of the two class A felony convictions and six years on each of the four class C felony convictions, to be served concurrently. Thus, we affirm in part and reverse in part.

### FACTS

Between early 2003 and December 2006, Laster lived with his girlfriend and two of her children, including A.Z., who was five years old in 2003 when Laster moved in. During this timeframe, Laster molested A.Z. between five and ten times. He touched A.Z.'s penis and anus, he touched A.Z.'s buttocks with his penis, and penetrated A.Z.'s anus with his finger and his penis.

A.Z. did not tell anyone about the molestation until Laster moved out because Laster had threatened him, telling A.Z. that he would "call the cops and have his mom arrested" and have him taken from his mother. Tr. p. 429, 433, 457, 571. Approximately one year after Laster moved out in 2006, A.Z. told his older

---

1. Ind.Code § 35–42–4–3(a)(1).

2. I.C. § 35–42–4–3(b).

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

sister what had happened, and his sister informed their mother.

Around that time—in late 2007—Laster moved to Texas. In April 2008, an Indiana State Police detective contacted Sergeant Todd Snyder of the Texas Rangers, requesting assistance in locating and interviewing Laster. Approximately three weeks later, Sergeant Snyder located Laster in Dickens, Texas.

After inquiring at Laster's place of employment, Sergeant Snyder drove to Laster's home. Sergeant Snyder was in uniform and arrived in an unmarked vehicle. He found Laster sitting on his front porch. Sergeant Snyder identified himself and informed Laster that he was working on an investigation and needed to speak with him. Sergeant Snyder did not elaborate about the purpose of the investigation and Laster did not ask. The sergeant did not want to conduct the interview at Laster's residence, so he gave Laster the option of riding with him or driving his own vehicle to the Dickens County Sheriff's Office, which was only three blocks from Laster's residence. Laster chose to ride with Sergeant Snyder. He rode in the front passenger seat and was neither handcuffed nor restrained.

Upon arriving at the Sheriff's Department, Sergeant Snyder and Laster went into the sergeant's personal office for the interview. Sergeant Snyder closed the door but did not lock it. The sergeant sat between Laster and the door but did not block the door. Sergeant Snyder informed Laster that he was not under arrest and that he would take Laster home after the interview regardless of what Laster said in the interview. The sergeant also told Laster that he was free to leave at any time. Sergeant Snyder explained to Laster the allegations that had been made

against him. Although Laster initially denied the allegations, after fifteen to twenty minutes of the interview had passed, he admitted "to rubbing [A.Z.'s] penis with his finger," to putting his finger inside A.Z.'s anus, and to rubbing his penis against A.Z.'s buttocks, and to rubbing A.Z.'s anus with his finger. Tr. p. 489, 502, 505–06.

Laster asked to take a break so that he could smoke a cigarette, so he and Sergeant Snyder stepped outside. After the break, the two men returned to the office. At this time, Sergeant Snyder informed Laster of his *Miranda* rights and Laster signed a written *Miranda* warning. The sergeant made an audio recording of this portion of the interview, and on the recording, Laster admitted to rubbing A.Z.'s penis three times with his finger, rubbing A.Z.'s anus with his finger, and rubbing his penis on A.Z.'s buttocks. Laster recanted his statement that he penetrated A.Z.'s anus with his finger. Laster stated on the recording that he was there voluntarily and wanted to tell the truth.

In full, Laster spent less than two hours with Sergeant Snyder. After the interview was finished, Sergeant Snyder took Laster home. He was arrested approximately one week later.

On May 29, 2008, the State[4] charged Laster with two counts of class A felony child molesting and seven counts of class C felony child molesting. On January 15, 2009, the State amended the charging information and added one count each of class A felony child molesting and class C felony child molesting.

On January 23, 2009, Laster filed a motion to suppress his statements to Sergeant Snyder, claiming a violation of his *Miranda* rights. The trial court denied the motion on February 18, 2009. At trial,

---

4. At some point, Laster was returned to Indiana.

Laster recanted his confession and stated that he only told the sergeant "what he wanted to hear." *Id.* at 685–86.

Laster's jury trial began on February 17, 2009, and he objected to Sergeant Snyder's testimony on the same basis as provided in the pretrial motion to suppress. The trial court overruled the objection and permitted Sergeant Snyder to testify about Laster's statements. On February 20, 2009, the jury found Laster guilty of two counts of class A felony child molesting and five counts of class C felony child molesting.[5] The jury found Laster not guilty of one count of class A felony and three counts of class C felony child molesting.

The same day, a second phase of the trial began to determine the existence of aggravating factors. The jury found as aggravators that Laster threatened A.Z. and was in a position of having care, custody, or control of the child. The trial court found the following mitigating circumstances: (1) that a lengthy incarceration would place a burden on Laster's family; and (2) Laster has no criminal history. On March 12, 2009, the trial court imposed consecutive thirty-year sentences for each of the two class A felony child molesting convictions. It imposed four-year terms for each of the four class C felony convictions, with one of those terms to be served consecutively and the remainder to be served concurrently with the remaining terms, for an aggregate sentence of sixty-four years imprisonment. Laster now appeals.

### DISCUSSION AND DECISION

#### I. Admission of Laster's Statements

■ Laster first argues that the trial court erred by admitting his statements to

Sergeant Snyder into evidence. We initially observe that questions regarding the admission of evidence are within the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. *Wells v. State,* 904 N.E.2d 265, 269 (Ind.Ct.App.2009), *trans. denied.* A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id.* The admissibility of a defendant's statements to the police is determined by consideration of the totality of the circumstances. *Griffith v. State,* 788 N.E.2d 835, 841 (Ind.2003).

■ Turning first to the portion of the interview that occurred before Sergeant Snyder gave Laster the *Miranda* warnings, our Supreme Court has explained the relevant rules as follows:

... *Miranda* prohibits the introduction at trial of any statement "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. These protections are applicable only if the defendant has been subjected to custodial interrogation, which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

... [T]he requirement that a person be advised of his Miranda rights applies only to interrogations conducted in "custodial settings." ... "[C]ustodial" inter-

---

5.  The trial court did not enter a judgment of conviction for one of the counts of class C felony child molesting. While the trial court did not specify its reasons for doing so, Laster had argued that this count was not alleged with sufficient specificity.

rogation may occur without a formal arrest if a reasonable person in the accused's circumstances would believe that he is not free to leave.... [T]he warnings are not required simply because the questioning takes place in a police station or because the questioned person is a police suspect.... Furthermore, whether the interrogating officers have focused their suspicions on the individual being questioned is not a relevant consideration unless they communicate such suspicions to that person.

*Cliver v. State,* 666 N.E.2d 59, 66 (Ind. 1996) (some internal citations omitted). Whether a person was in custody depends on objective circumstances rather than the subjective views of the interrogating officers or the subject being questioned. *Loving v. State,* 647 N.E.2d 1123, 1125 (Ind. 1995).

First, therefore, we must determine whether Laster was "in custody" at the time of the questioning. In support of his argument that he was in custody for this portion of the interview, Laster directs our attention to *McIntosh v. State,* 829 N.E.2d 531 (Ind.Ct.App.2005). We find, however, that *McIntosh* is easily distinguishable from the circumstances herein. In that case—in which this court ultimately found that the suspect was, in fact, in custody— several police vehicles with emergency lights on and officers with police dogs surrounded the motel where the defendant was staying. Police officers entered the defendant's room, handcuffed her, searched her, and, with five police officers surrounding her, escorted her from the room. The defendant was then placed in the rear seat of the police car and transported to the police department for interrogation. *Id.* at 534. In that situation, this court found that the fact that police officers told the defendant that she was free to leave at any time and that she was not under arrest did not overcome the

surrounding circumstances, which would have led a reasonable person to conclude that she was not, in fact, free to leave. *Id.* at 538.

Here, in contrast, the record reveals that when Sergeant Snyder approached Laster at his home, he identified himself and informed Laster that he needed to speak with him regarding an investigation. The sergeant did not reveal what the investigation was about and Laster did not ask. Sergeant Snyder gave Laster the option of riding with him or driving himself to the police station; Laster opted to ride with the sergeant. He rode in the front passenger seat of the police vehicle and was not restrained in any way. The interview was conducted in Sergeant Snyder's personal office rather than an interrogation room. The sergeant sat between Laster and the door, but did not block the door. Sergeant Snyder told Laster that he was not under arrest, that he was free to leave at any time, and that the sergeant would take him home after the interview regardless of what he said during that time. At the close of the interview, Sergeant Snyder did, in fact, take Laster home.

We find these facts more analogous to *Faris v. State,* 901 N.E.2d 1123 (Ind.Ct. App.2009), *trans. denied,* in which the defendant went to a police station for an interview regarding an alleged molestation. He was questioned by two officers for no more than two hours, was never told that he was under arrest, and, as promised, was permitted to go home after the interview was finished. *Id.* at 1124. This court found that under those circumstances, the defendant was not in custody; therefore, no *Miranda* warnings were required. *Id.* at 1126–27; *see also Luna v. State,* 788 N.E.2d 832, 834 (Ind.2003) (holding that "a person who goes voluntari-

ly for a police interview, receives assurances that he is not under arrest, and leaves after the interview is complete has not been taken into 'custody' by virtue of an energetic interrogation so as to necessitate *Miranda* warnings").

As in *Faris* and *Luna,* here, Laster went to the police station with Sergeant Snyder voluntarily. He rode in the front seat of the vehicle, was not restrained, and was not under arrest. The interview, which took place in the sergeant's office, lasted for less than two hours. Sergeant Snyder assured Laster that he was not under arrest and was free to leave at any time. At the close of the interview, Laster was taken home as promised. Under these circumstances, we find that Laster was not in custody during this interview such that *Miranda* warnings were required. Therefore, the trial court did not err by admitting Laster's statements—either those made before or after the *Miranda* warnings were given—into evidence.

## II. Sentence

Laster next argues that the aggregate sixty-four year sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character. In reviewing a Rule 7(B) appropriateness challenge, we defer to the trial court. *Stewart v. State,* 866 N.E.2d 858, 866 (Ind.Ct.App.2007). The burden is on the defendant to persuade us that his sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006).

When determining whether a sentence is inappropriate, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Rich v. State,* 890 N.E.2d 44, 53 (Ind.Ct.App.2008). The trial court imposed advisory thirty-year terms on each of Laster's two class A felony convictions. *See* Ind.Code § 35–50–2–4

(specifying that the sentencing range for a class A felony is twenty to fifty years, with an advisory sentence of thirty years). The trial court also imposed advisory four-year terms on each of Laster's four class C felony convictions. *See* I.C. § 35–50–2–6 (specifying that the sentencing range for a class C felony is two to eight years, with an advisory sentence of four years). Although the trial court elected not to impose sentences greater than the advisory terms, it chose to order that three of the six sentences be served consecutively. *See Monroe v. State,* 886 N.E.2d 578, 580 (Ind. 2008) (criticizing the trial court because "[a]lthough the trial court identified three aggravating circumstances, it does not explain why these circumstances justify consecutive sentences as opposed to enhanced concurrent sentences").

As for the nature of Laster's offenses, he repeatedly molested a five-year-old child with whom he lived. These offenses are undeniably serious and warrant significant punishment, but we must note that there is no evidence that Laster used significant force on A.Z., nor is there evidence specifically linking Laster's actions to injuries sustained by the child. *See Tyler v. State,* 903 N.E.2d 463, 469 (Ind.2009) (revising an enhanced sentence to the advisory term in part because there was no evidence that the defendant used physical force on his child molesting victims, nor were the children physically injured by the molestation); *see also Prickett v. State,* 856 N.E.2d 1203, 1209 (Ind.2006) (revising an enhanced sentence to the advisory term in part because evidence of Prickett's force used in his molestation was conflicting and did "not offer weighty enough evidence of force to justify a sentence enhancement").

Laster was a father figure to A.Z., shared a home with A.Z. for years, and occupied a position of care, custody, or control of the child. Furthermore, Last-

er's threats to A.Z. should be given significant weight. He warned the boy that if he told anyone about the molestation, A.Z.'s mother would be sent to jail and A.Z. would be taken from her.

Turning to Laster's character, we must also give significant weight to the fact that he has no criminal history whatsoever. He has maintained steady employment throughout his adult life. We need not give credence, as he suggests, to the fact that he initially confessed to the crimes, given that he later recanted those confessions and claimed innocence throughout his jury trial.

Our Supreme Court has recently issued an opinion that is instructive herein. In *Rivers v. State,* the defendant was convicted of two counts of class A felony child molesting and one count of class C felony child molesting. 915 N.E.2d 141 (Ind. 2009). Rivers had molested his seven- or eight-year-old niece at her home on two occasions. The trial court imposed consecutive thirty-year terms on the class A convictions and a concurrent four-year term on the class C felony, for an aggregate sixty-year term. In considering Rivers's character, our Supreme Court noted that he had no prior convictions, maintained steady employment, and served as a father figure to the victim for a number of years before committing his crimes. Thus, his relationship with the girl was "constructive" before he molested her. *Id.* at 143. As for the nature of the offenses, the *Rivers* court stated as follows:

> Turning to the offenses, the parties are correct that Rivers' acts of molesting his niece deserve a serious sanction. Rivers was M.N.'s uncle and clearly violated a position of trust. The record does not indicate his crimes occurred over a long period of time, however, or that there was any other sexual misconduct on Rivers' part. Rather, the record indicates

> Rivers molested M.N. on two occasions (charged as three) in a relatively short period of time, then stopped on his own accord, and did not commit any other offenses in the seven years that passed until he was charged.

*Id.* at 143–44. Our Supreme Court concluded that it was not warranted to order that Rivers's class A advisory sentences run consecutively, directing that all three of his sentences be served concurrently, for an aggregate thirty-year term.

Here, as in *Rivers,* there was one victim, the crimes do not appear to have occurred over a lengthy period of time, and there is no evidence that there was other uncharged sexual misconduct on Laster's part. Also as in *Rivers,* Laster violated a position of trust by committing this crime. And finally, as in *Rivers,* Laster has no criminal history and has maintained steady employment throughout his adult life.

In *Rivers,* however, the defendant and his victim appear to have had a healthy relationship for years before he committed his crimes; there is no evidence of such a relationship between Laster and A.Z. Furthermore, in this case, there is the additional aggravating factor of the threats made by Laster to A.Z. should he tell anyone about the molestation. Under these circumstances, while we do not find that the nature of the offenses and Laster's character warrant consecutive sentences, we do find that sentences greater than the advisory term are warranted.

In *Harris v. State,* our Supreme Court considered a defendant who had been convicted of two counts of class A felony child molesting and sentenced to consecutive fifty-year terms. 897 N.E.2d 927 (Ind.2008). Harris had occupied a position of trust with his victim and had committed multiple uncharged acts of sexual misconduct that occurred over a lengthy period of time. Our Supreme Court observed, however,

that the two counts of child molestation were identical and involved the same child. He also had a prior criminal history, but our Supreme Court emphasized that he had no prior sex offenses in his record and found that his prior convictions were not significant aggravators. *Id.* at 930. Ultimately, the *Harris* court found that while enhanced sentences were warranted, consecutive sentences were unwarranted. Thus, our Supreme Court revised Harris's sentence to two concurrent fifty-year terms. *Id.*

In *Monroe,* the defendant was convicted of five counts of class A felony child molesting. 886 N.E.2d at 579. The trial court sentenced Monroe to a term of twenty-two years imprisonment, with two years suspended to probation, on each of the five counts, but ordered the terms to be served consecutively, for an aggregate sentence of 100 years imprisonment. In considering the nature of the offense, our Supreme Court noted that Monroe was in a position of trust with his victim and molested the child repeatedly for over two years, but the court also observed that the five counts were identical and involved the same child. As for Monroe's character, the court noted that although he had a prior criminal record, all of his convictions were driving-related, so his criminal history did not justify the imposition of consecutive sentences. In the end, our Supreme Court found that the nature and circumstances of the offenses and his character warranted enhanced, but not consecutive, sentences. So the court revised Monroe's sentence to a maximum fifty-year term for each of the five counts but directed that they be served concurrently, remanding so that the trial court could determine whether and to what extent any portion of the sentence should be suspended to probation. *Id.* at 581.

We find that the circumstances herein warrant a similar result to that reached by our Supreme Court in *Harris* and *Monroe.* Given the position of trust that Laster occupied with A.Z. and his threats to the child, we believe enhanced terms are warranted. But his lack of criminal history and steady employment together with the facts that there was one victim and no uncharged sexual misconduct lead us to conclude that consecutive sentences were inappropriate. Therefore, we revise Laster's sentences as follows: thirty-six years on each of the two class A felony convictions and six years on each of the four class C felony convictions, to be served concurrently.

The judgment of the trial court is affirmed in part and reversed in part.

BAILEY, J., and ROBB, J., concur.