**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEREMY K. NIX**
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERRY L. LACROIX, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 35A05-1404-CR-196 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE HUNTINGTON SUPERIOR COURT
The Honorable Thomas M. Hakes, Judge
Cause No. 35C01-1208-FA-175

**December 8, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Terry LaCroix appeals his convictions of four counts of Child Molesting,[1] a class A felony, and his aggregate sentence of 105 years imprisonment with 45 years suspended to probation. LaCroix argues that the trial court erred in admitting hearsay testimony from two nurses and that his sentence is inappropriate in light of the nature of the offense and his character. We find that the trial court did not err in admitting the hearsay testimony. However, we find that the aggregate sixty-year executed sentence ordered by the trial court was ordered without statutory authority and was inappropriate. Accordingly, we revise LaCroix's sentence to concurrent forty-year terms with thirty-five years executed and five years suspended to probation on all counts.

FACTS

Between 2009 and 2012, LaCroix lived with his girlfriend and her daughter, L.T. L.T., who was nine years old at the time of trial, looked upon LaCroix as a father figure. While the three lived together, LaCroix molested L.T. many times. When it appeared that L.T. was asleep, LaCroix would carry her to her mother's bed, remove her underwear, and insert his finger into her vagina. L.T., who was actually awake throughout these incidents but pretending to be asleep, would then roll over and act like she was about to wake up to stop LaCroix from continuing.

In late July 2012, L.T. spoke to her father about the incidents. L.T.'s father immediately took her to Marion General Hospital, where L.T. reported the incidents to Nurse Elizabeth Schramm. Nurse Schramm contacted the Huntington Police Department

---

[1] Ind. Code § 35-42-4-3.

2

as well as the Fort Wayne Sexual Assault Treatment Center. On August 3, 2012, L.T. was examined by Nurse Joyce Moss at the Fort Wayne Sexual Assault Treatment Center. L.T. described the incidents to Nurse Moss and told her that these incidents had occurred many times.

On August 10, 2012, LaCroix was charged with two counts of class A felony child molesting. On September 9, 2013, the State added two more counts of class A felony child molesting. On March 7, 2014, a jury convicted LaCroix of all four counts. The trial court sentenced LaCroix to thirty-five years on each count, with twenty years of each count executed and fifteen years suspended to probation. The trial court ordered counts I, II, and III to run consecutively and count IV to run concurrently to count III, resulting in an aggregate sentence of sixty years imprisonment and forty-five years probation. LaCroix now appeals.

## DISCUSSION AND DECISION

### I. Hearsay Testimony

LaCroix first argues that the trial court erred in admitting the hearsay testimony of Nurses Schramm and Moss. Both nurses testified that L.T. told them that she had been molested by LaCroix. LaCroix did not object to Nurse Schramm's testimony but did object to Nurse Moss's testimony. The trial court overruled LaCroix's objection on the basis of Indiana Rule of Evidence 803(4), which allows for the admission of hearsay evidence if the statement was made for the purpose of medical diagnosis or treatment. LaCroix contends that the evidence lacked a sufficient foundation showing that L.T.

3

believed that the statements she made to the nurses were for the purpose of receiving medical treatment.

Initially, we note that LaCroix failed to object to the admission of Nurse Schramm's hearsay testimony. Tr. p. 131-38. LaCroix has therefore waived the issue on appeal unless the admission of the testimony amounted to fundamental error. Gyamfi v. State, 15 N.E.3d 1131, 1135 (Ind. Ct. App. 2014). However, as LaCroix does not claim that the admission of Nurse Schramm's testimony amounted to fundamental error, we will not consider the issue. Curtis v. State, 948 N.E.2d 1143, 1149 (Ind. 2011).

Turning to the admission of Nurse Moss's hearsay testimony, we note that questions regarding the admissibility of evidence are within the sound discretion of the trial court and we review the trial court's decision only for an abuse of discretion. Laster v. State, 918 N.E.2d 428, 432 (Ind. Ct. App. 2009). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it or if it misinterprets the law. Id.

"Hearsay" is an out-of-court statement used to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is generally inadmissible unless it falls under an exception provided for by the rules of evidence or other law. Evid. R. 802. Rule 803(4) provides an exception for a statement that:

(A) is made by a person seeking medical diagnosis or treatment;

(B) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and

4

(C) describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause.

Our Supreme Court has explained the purpose of this exception as follows:

> When a competent adult patient visits a doctor and provides the physician with a medical history intending to aid in their diagnosis or treatment, we presume those statements are made truthfully because adults know that lying to one's doctor risks misdiagnosis or mistreatment. Accordingly, the Rules of Evidence generally allow medical professionals to provide substantive testimony as to the statements their patients make in the course of providing their medical history—even though that testimony would ordinarily be excluded as hearsay.

VanPatten v. State, 986 N.E.2d 255, 257 (Ind. 2013). The Court went on to note, however, that "[w]hen the patient is a young child, it is not so easy to assume that he or she recognized the merit of providing a nurse or doctor with truthful information." Id. Accordingly, when the hearsay testimony sought to be admitted under Rule 803(4) concerns the statements of a child, "we require a more robust evidentiary foundation[.]" Id.

To determine if hearsay should be admitted under Rule 803(4), we ask two questions: (1) "is the declarant motivated to provide truthful information in order to promote diagnosis and treatment," and (2) "is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment." McClain v. State, 675 N.E.2d 329, 331 (Ind. 1996).

In VanPatten, the first prong of the analysis was at issue. 986 N.E.2d at 260. The trial court, pursuant to Rule 803(4), admitted the hearsay testimony of a nurse regarding statements made by a six-year-old who was alleged to be the victim of sexual abuse. Id.

5

at 257. The child had recanted by the time of trial, so the hearsay was the only substantive evidence implicating the defendant in the crimes. Id. Our Supreme Court held that the trial court erred in admitting the testimony because there was no "'evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information.'" Id. at 267 (quoting McClain, 675 N.E.2d at 331). The Court noted, among other things, that (1) the child was only six years old, (2) the child was examined by the nurse only after an extensive interview with the Department of Child Services (DCS), making it unclear to the child whether the nurse's examination was for medical treatment or to assist in a police investigation, and (3) there was no testimony that the child understood the nurse's role or the role of doctors and nurses in general.

LaCroix argues that this case is analogous to VanPatten. He notes that no testimony was presented indicating whether L.T. had any prior experience with a doctor's office or a nurse. Appellant's Br. p. 10. Thus, LaCroix argues that we cannot "determine whether [L.T.] understood the importance of providing truthful information for [the] purpose of a medical diagnosis or treatment." Id.

However, we find this case distinguishable from VanPatten in several ways. First, we note that L.T. was nine years old at the time while the child in VanPatten was only six. This is a significant difference. The Court in VanPatten noted that, had the child been older, "the appearance of the building, the exam room, and [the nurse's] scrubs and job title would probably be sufficient circumstances from which to infer that the two girls

6

. . . were [] motivated to speak truthfully." 986 N.E.2d at 265. While we do not hold that a nine-year-old child should automatically be presumed to understand the importance of speaking truthfully to a nurse based on the appearance of the building and the nurse's clothing, we do find that a nine-year-old child is significantly more likely to come to such a conclusion than a six-year-old.

Second, although L.T. was examined by Nurse Moss after she had met and spoken with a family case manager at DCS, this meeting occurred after she had already been taken to Marion General Hospital to meet with Nurse Schramm. The incident was thus initially treated as medical in nature. L.T.'s father testified that, on the way to the hospital, he told her that she would be questioned once they got there and that it was very important for her to be honest. Tr. p. 196.

Finally, unlike in VanPatten, L.T. testified that she understood that Nurse Moss was a nurse. Tr. p. 485. L.T. testified that she described to Nurse Moss the physical pain that she felt as a result of being molested by LaCroix, indicating that she was aware that Nurse Moss played a medical role. Id. Thus, there is at least some testimony that L.T. understood Nurse Moss's role and was therefore motivated to be truthful when speaking with her.[2]

_____

[2] Although we find that there was a sufficient foundation to allow the admission of Nurse Moss's hearsay testimony, we note that this foundation could have been better laid. In VanPatten, our Supreme Court listed possible questions that could be asked of a child in order to establish that the child understood the role of the medical professional, such as: "Do you know what nurses do?" "Do you tell nurses and doctors the truth?" "Do you know why you tell nurses and doctors the truth?" 986 N.E.2d at 266. The Court also listed questions that could be asked of the nurse, including: "Did you explain the purpose of the examination?" "Did you ask if the child understood the purpose of the examination?" "How did the child

7

Even if we assume solely for argument's sake that it was erroneous to admit this evidence, we would find the error to be harmless. Errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; McClain, 675 N.E.2d at 331. This Court considers the probable impact of the evidence upon the jury in determining whether its introduction affected the defendant's substantial rights. McClain, 675 N.E.2d at 331. If the evidence is merely cumulative of other evidence admitted, its admission is not grounds for reversal. Id.

In this case, L.T. testified at trial that LaCroix molested her. Tr. p. 444-45. This alone would have been sufficient to sustain a guilty verdict. Becraft v. State, 491 N.E.2d 535, 536 (Ind. 1986). In addition to L.T.'s testimony, Nurse Moss testified that L.T. told her that LaCroix molested L.T. Tr. p. 363-64. Thus, Nurse Moss's testimony was merely cumulative of what L.T. testified to herself. Although LaCroix argues that Nurse Moss's testimony may have enhanced L.T.'s credibility, other evidence that was properly admitted may have similarly enhanced L.T.'s credibility. Appellant's Br. p. 11. In particular, Nurse Schramm's testimony regarding L.T.'s statements was virtually identical to Nurse Moss's testimony. Tr. p. 135-37. As LaCroix failed to object at trial and fails to argue fundamental error on appeal, it is undisputed that Nurse Schramm's testimony was properly admitted. Accordingly, we cannot say that the jury was swayed

---

respond?" Id. In this case, none of these questions were asked. Had they been, a better foundation for the admission of the hearsay would have existed. We encourage practitioners in this State to follow the helpful roadmap set forth by our Supreme Court in VanPatten.

8

by the introduction of Nurse Moss's testimony after hearing the same testimony from Nurse Schramm. Therefore, any error in admitting it was harmless.

## II. LaCroix's Sentence

LaCroix next challenges the appropriateness of his sentence. Under Indiana Appellate Rule 7(B) "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade us that his sentence is inappropriate. Laster, 918 N.E.2d at 434.

The penalty for a class A felony is imprisonment for "a fixed term of between twenty (20) to fifty (50) years, with the advisory sentence being thirty (30) years." Ind. Code § 35-50-2-4. The trial court sentenced LaCroix to thirty-five years on each count. The trial court ordered counts I, II, and III to run consecutively and ordered count IV to run concurrently to count III. On each count, the trial court ordered twenty years executed and suspended fifteen years to probation. This resulted in an aggregate sentence of sixty years imprisonment and forty-five years probation.

Initially, we observe that the trial court was without statutory authority to order this sentence. When LaCroix was sentenced, Indiana Code section 35-50-2-2(e) stated that "[w]henever the court suspends that part of the sentence of a sex or violent offender . . . that is suspendible . . . , the court shall place the sex or violent offender on probation . . . for not more than ten (10) years." I.C. § 35-50-2-2(e) (2013). Thus, the trial court

9

erred in imposing fifteen-year probation periods for each count. Also, at the time of sentencing, Indiana Code section 35-50-2-2(i) provided that, in the case of those convicted of class A felony child molesting against victims less than twelve years old, "the court may suspend only that part of the sentence that is in excess of thirty (30) years." I.C. § 35-50-2-2(i) (2013). Therefore, the trial court erred in suspending LaCroix's sentence below thirty years for each count. Consequently, we find that the trial court was without statutory authority to impose these sentences.

As to the appropriateness of the sentences under Rule 7(B), we first turn to the nature of the offense. LaCroix was convicted of four counts of child molesting for removing L.T.'s underwear and inserting his finger into her vagina while he believed she was asleep. We note that crimes against children are particularly contemptible. Walker v. State, 747 N.E.2d 536, 538 (Ind. 2001). LaCroix was also in a position of trust with L.T., who looked upon him as a father figure. However, the four counts of child molestation were identical and involved the same child. See Monroe v State, 886 N.E.2d 578, 580 (Ind. 2008) (consecutive sentence of 100 years for five counts of child molesting manifestly unreasonable in part because all counts were identical and involved the same child); Walker, 747 N.E.2d at 538 (consecutive sentence of eighty years for two counts of child molesting manifestly unreasonable in part because all counts were identical and involved the same child). Furthermore, there was no evidence that LaCroix inflicted any substantial physical injury on L.T. Tr. p. 366. Thus, LaCroix's position of trust was the only substantial aggravating factor relied upon by the trial court.

In regard to LaCroix's character, the trial court noted his criminal history as an aggravating factor. However, "the significance of aggravating factors varies based on the gravity, nature and number of prior offenses as they relate to the current offense." Monroe, 886 N.E.2d at 580. As LaCroix has only one prior conviction for check deception, an offense unrelated to child molesting, the trial court was correct to afford this little weight. Tr. p. 681. We also note that LaCroix was gainfully employed up until the time he was incarcerated for these crimes. Tr. p. 673. We do not find LaCroix's character to warrant consecutive sentences.

The principle role of review under Rule 7(B) is to attempt to leaven the outliers. Merida v. State, 987 N.E.2d 1091, 1092 (Ind. 2013). With this in mind, we find this case similar to a number of other cases finding consecutive sentences for child molesting inappropriate. See Rivers v. State, 915 N.E.2d 141 (Ind. 2009) (consecutive sixty-year sentence for two counts of child molesting inappropriate, revised to concurrent terms of thirty years); Monroe, 886 N.E.2d 578 (consecutive 100-year sentence for five counts of child molesting inappropriate, revised to concurrent terms of fifty years); Walker, 747 N.E.2d 536 (consecutive eighty-year sentence for two counts of child molesting inappropriate, revised to concurrent terms of forty years); Laster, 918 N.E.2d 428 (consecutive sixty-year sentence for two counts of child molesting inappropriate, revised to concurrent terms of thirty-six years). We believe LaCroix's position of trust was sufficiently aggravating to justify an enhanced sentence. However, LaCroix's lack of significant criminal history and his steady employment together with the fact that these

acts were all identical and committed against one victim lead us to conclude that consecutive sentences were inappropriate.[3] Therefore, we revise LaCroix's sentence to concurrent forty-year terms with thirty-five years executed and five years suspended to probation on all counts.[4]

The judgment of the trial court is affirmed in part and reversed in part. The cause is remanded with instructions to enter a sentencing order imposing concurrent forty-year terms with thirty-five years executed and five years suspended to probation on all counts.

KIRSCH, J., and ROBB, J., concur.

---

[3] While a trial court can certainly impose consecutive sentences if warranted by aggravating circumstances, "it must articulate, explain, and evaluate the aggravating circumstances that support the sentence." Monroe, 886 N.E.2d at 580. Here, the trial court did not do this. Although the trial court identified two aggravating factors, it did not explain why these factors justified consecutive sentences rather than enhanced concurrent sentences.

[4] We suspend a portion of LaCroix's sentence to probation in light of the fact that the trial court previously determined that such a suspension was appropriate.