## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 13 2017, 6:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jerry Coop,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 13, 2017

Court of Appeals Case No.
22A01-1610-CR-2376

Appeal from the Floyd Superior Court

The Honorable Susan L. Orth, Judge

Trial Court Cause No.
22D01-1506-F1-1121

**Najam, Judge.**

# Statement of the Case

[1] Jerry Coop appeals his four convictions for child molesting, following a jury trial, and his ensuing 120-year sentence. Coop raises five issues for our review, which we restate as the following four issues:

1. Whether the trial court committed fundamental error when it permitted the State to introduce certain testimony and exhibits.

2. Whether the prosecutor committed misconduct.

3. Whether the trial court abused its discretion when it found an aggravating circumstance during sentencing.

4. Whether Coop's 120-year aggregate sentence is inappropriate in light of the nature of the offenses and his character.

[2] We affirm Coop's convictions and sentence.

# Facts and Procedural History

[3] Between February of 2014 and April of 2015, Coop repeatedly molested R.M. and H.M., who were friends of Coop's minor daughter and between the ages of ten and twelve at the time. Coop molested the two girls as they stayed overnight at his house during sleepovers with Coop's daughter. Another friend, S.G., also frequently stayed the night with the girls.

[4] S.G. and Coop's minor son, K.C., observed Coop having intercourse with R.M. and H.M. and also engaging the two girls in oral sex. S.G. reported her

observations to a school counsellor, and all three girls and K.C. thereafter underwent forensic interviews. Initially, the children, except S.G., denied the accusations. However, K.C. later stated that he saw Coop having intercourse with the two girls and performing oral sex on them.

[5] R.M. and H.M. later also confirmed S.G.'s report. According to R.M., Coop would give her a pill before bedtime to help her sleep. However, on more than one occasion, she woke up with Coop on top of her, touching her, or "inside of [her]." Tr. Vol. 2 at 215. H.M. described similar experiences: shortly before bedtime, Coop would give her a pill, which caused her to "black out." *Id.* at 128. Nonetheless, on more than one occasion, H.M. woke up with Coop "on top of [her]," touching her, or "inside of [her]." *Id.* at 130-31.

[6] Both girls stayed at Coop's house frequently: R.M. stayed there about three weeks each month and had her own closet and bed; H.M. stayed there most weekends. Coop would play games with the girls, take them shopping, and buy them gifts, which included buying a laptop for R.M. R.M. and H.M. both described Coop as "a father figure" to them. *Id.* at 133, 203.

[7] R.M. and H.M. submitted to physical examinations. The medical examiner observed no physical signs of "acute or chronic trauma" to either girl's genitals but did note that both girls tested positive for Gardnerella Vaginalis, a bacterial infection that can be, but is not always, transmitted by sexual means. Tr. Vol. 3 at 60, 65. Coop submitted to a test for Gardnerella Vaginalis and tested negative. However, Gardnerella Vaginalis "is not typically found in males"

and "[a] negative result does not rule out . . . Gardnerella" in the tested subject. *Id.* at 142.

[8] The State arrested Coop and charged him with multiple offenses of child molesting. Thereafter, Coop waived his *Miranda* rights and admitted that he would sleep with the girls and give them medication prior to bedtime. Coop further asserted that one of the girls once "jumped onto his lap . . . and . . . straddled him like a stripper." *Id.* at 126 (quotation marks omitted). Coop further stated that "one of the girls" had entered his room once while he was naked and then ran out of the room. *Id.* He otherwise denied any physical involvement with the girls.

[9] At his ensuing jury trial, S.G., K.C., R.M., and H.M. each testified against Coop. The investigating officer, Floyd County Sheriff's Department Detective George Schultz, and the forensic interviewer, Rebecca Sanders, also testified. In particular, Sanders testified as follows on direct examination:

> Q. Were you here today when [R.M. and H.M.] testified?
>
> A. No, I wasn't.
>
> Q. Would it surprise you that either one of them has told us more?
>
> A. Oh, no, not at all.
>
> Q. Should we be worried about that?

A.      . . . I would not be worried at all about that.

Q.      . . . why?

A.      . . . [K]ids disclose in stages and it's just not uncommon
that it all doesn't come out the first time they talk. . . .

\* \* \*

Q.      So, the changing stories is not uncommon?

A.      No, but . . . even changing is not necessarily the word.
Evolving, . . . fluid.  You know, . . . these things develop.  It's not
necessarily that they change.  They . . . evolve.

*Id.* at 42-43.  Following that testimony, on cross-examination Coop's counsel

questioned Sanders on whether the children might have been told what to say

by their parents and whether Sanders discussed with the children apparent

inconsistencies between their statements to her.  After cross-examination, a

juror submitted the following question to Sanders, which she was permitted to

answer without objection:

Q.      . . . [D]id you ever feel like the kids had talked between
themselves?

A.      Well, they told . . . me they talked between themselves in
regards to [S.G.] talking to them about what she had seen and
them talking to her about what they remembered happening. . . .
[S.G.] told [H.M.] what she saw and . . . [H.M.] kind of said, like
I don't want to talk about it. . . .  [S]o I mean they told me they
talked to each other.  I didn't get the feeling, if the question is,

did they get together to get their statements straight, absolutely not, because . . . they weren't identical, you know, I mean these are kids. Adults have trouble keeping lies straight. They can't lie the same way three times. These are kids so they certainly can't. . . . [A]nd . . . they didn't come in there and parrot the same interview each time they came in, each child was individual. So I didn't get that impression at all.

*Id.* at 52-53.

[10] During closing statements, Coop's counsel argued that the children were not being truthful in their accusations and that he "just want[s] to know the truth here." *Id.* at 183. In response, the prosecutor stated as follows during his rebuttal:

I think [defense counsel] did a pretty good job. He sort of started off with . . . the search for the truth. Remember him saying that, as if, well, you know, he's sort of deciding what the truth is. That was an, I'm here to determine whether this is true or not true. Um, is that his job? No. His job is to represent his client. He's not here to search for the truth. . . . [T]he Prosecutor has a little bit different duty. That's why I dismissed one of the counts. Okay. A little bit of a different job here. So he certainly has to advocate for his client and he should, not discounting that. But to think that that's his job is to look for the truth, no, his job is to represent his client.

*Id.* at 199.

[11] Thereafter, the jury found Coop guilty of two counts of child molesting, each as a Level 1 felony, as charged. The jury also found Coop guilty of child

molesting, as a Level 4 felony, and child molesting, as a Class C felony,[1] which were lesser-included offenses to the offenses charged. Following a sentencing hearing, the court found the harm to the victims and Coop's abuse of a position of trust to be aggravating circumstances, and the court sentenced Coop to an aggregate term of 120 years in the Department of Correction. This appeal ensued.

# Discussion and Decision

## *Issue One: Alleged Fundamental Errors*

[12] On appeal, Coop first asserts that the trial court committed fundamental error when it permitted the State to introduce certain testimony and exhibits. As he did not object to the admission of the testimony in the trial court, we review Coop's arguments for fundamental error. *See Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013). The fundamental error exception is "extremely narrow" and "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* (quotation marks omitted). That is, the appellant "must now prove fundamental error by showing the alleged violation was so prejudicial to his rights as to make a fair trial impossible." *Griffith v. State*, 59 N.E.3d 947, 957 (Ind. 2016) (quotation marks and brackets

---

[1] For this offense, the State alleged that Coop had committed child molesting, as a Class A felony, for his molestation of R.M. in February of 2014, which was prior to our criminal code's change in felony offenses from classes to levels.

omitted). "This exception is available only in egregious circumstances." *Halliburton*, 1 N.E.3d at 678 (quotation marks omitted).

[13] Coop argues that Sanders' testimony on direct examination was impermissible vouching testimony because she stated that the jury should "not be worried" about changes R.M. and H.M. made to their stories of what happened as time passed. *See* Tr. Vol. 3 at 42. He also argues that Sanders impermissibly asserted, in response to a jury question following cross-examination, that the children "absolutely [did] not" "get together to get their statements straight." *See id.* at 52-53. And he avers that the State impermissibly presented "drumbeat repetition" of R.M. and H.M.'s accusations through other sources—namely, Detective Schultz prior to the testimony of R.M. and H.M., Sanders afterwards, and in the admission of two exhibits—to bolster its case. Appellant's Br. at 26.

[14] We first consider Sanders' alleged vouching testimony. Indiana Evidence Rule 704(b) generally prohibits witnesses from testifying as to whether another witness has testified truthfully. However, as the Indiana Supreme Court has made clear:

> the subtle distinction between an expert's testimony that a child has or has not been coached versus an expert's testimony that the child did or did not exhibit any "signs or indicators" of coaching is insufficient to guard against the dangers that such testimony will constitute impermissible vouching . . . . Nevertheless, once a child's credibility is called into question[,] proper expert testimony may be appropriate. . . . We thus align ourselves with those jurisdictions that permit testimony about the signs of coaching and whether a child exhibited such signs or has or has

not been coached, provided that the defendant has opened the door to such testimony.

*Sampson v. State*, 38 N.E.3d 985, 991-92 (Ind. 2015) (emphasis removed) (quotation marks and footnote omitted).

[15] We cannot say that the trial court committed fundamental error when it permitted Sanders' testimony. First, Sanders' testimony on direct examination was not vouching testimony. Sanders did not testify, directly or indirectly, as to the children's credibility. Rather, she explained that it is normal child behavior to disclose information incrementally and to have a child's story "develop" as her memory becomes more clear through prior disclosures. Tr. Vol. 3 at 42-43. This is testimony about child behavior generally and is not testimony vouching for the credibility of R.M. or H.M. in particular. *See, e.g., Carter v. State*, 31 N.E.3d 17, 29-30 (Ind. Ct. App. 2015), *trans. denied*.

[16] Second, Sanders' testimony in response to the juror's question, insofar as it may have been vouching for another witness's credibility, was permissible under *Sampson* as Coop had opened the door. *See* 38 N.E.3d at 991-92. During Sanders' cross-examination, Coop's counsel attacked R.M. and H.M.'s credibility, and he questioned whether Sanders had investigated changes in the children's stories and whether they had discussed their stories with others. It was after that line of inquiry that the juror question was submitted to Sanders, which she answered without objection. As her testimony was permissible under *Sampson*, its admission was not error, let alone fundamental error.

[17]    Finally, having reviewed the whole of the record that was before the jury, we cannot agree that any error in the admission of the now-challenged "drumbeat" evidence of Detective Schultz's testimony, Sanders' testimony, and two relevant and admissible exhibits was so egregious that it made a fair trial impossible. *See Griffith*, 59 N.E.3d at 957. Indeed, the Indiana Supreme Court has held, under our standard of review for properly preserved issues, that improperly admitted statements that might bolster a witness's credibility but have "only [a] minor impact on the jury" do not merit reversal. *Craig v. State*, 630 N.E.2d 207, 211-12 (Ind. 1994). And that is the case with the now-challenged "drumbeat" evidence—this evidence might have supported the victims' testimony but it did not elaborate on that testimony. Accordingly, we also find no fundamental error in the admission of that evidence.

### Issue Two: Alleged Prosecutorial Misconduct

[18]    Coop next asserts that the prosecutor committed misconduct when, in his closing rebuttal, he "improperly and unfairly distinguished between the roles of defense counsel and the prosecution." Appellant's Br. at 17. We review a prosecutorial misconduct claim using a two-step analysis. *State v. Taylor*, 49 N.E.3d 1019, 1029 (Ind. 2016). First, there must be misconduct. *Id.* Second, the misconduct must have placed the defendant in a position of grave peril. *Id.* The gravity of the peril is measured "by *the probable persuasive effect* of the misconduct *on the jury's decision* rather than the degree of impropriety of the conduct." *Id.* And, again, as Coop has not preserved this issue for review with

a proper objection at trial, on appeal he must show that the alleged error made a fair trial impossible. *Griffith*, 59 N.E.3d at 957.

[19] Here, Coop asserts that the prosecutor committed misconduct and placed Coop in grave peril, and made a fair trial impossible, when the prosecutor told the jury that defense counsel's "job is to represent his client," "not . . . to search for the truth," while the prosecutor has "a different job here." Tr. Vol. 3 at 199. While we do not condone such statements, nonetheless we hold that the prosecutor's comments did not make a fair trial impossible.

[20] In *Ryan v. State*, the Indiana Supreme Court held:

> While "comments that demean opposing counsel, especially in front of a jury, are inappropriate," *Marcum v. State*, 725 N.E.2d 852, 859 (Ind. 2000), not all of the allegedly improper comments here are objectionable. "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Cooper[ v. State]*, 854 N.E.2d [831, 836 (Ind. 2006)]. Here, the prosecutor used her rebuttal to respond to defense counsel's closing argument, in which he criticized the quality of the police investigation and then compared famous cases of false accusations such as "the Duke Lacrosse case," which "supposedly had a full and thorough investigation." Tr. at 142. Without question, the characterization of defense counsel's line of argumentation as "how guilty people walk" and a "trick," is inconsistent with the requirement that lawyers "demonstrate respect for the legal system and for those who serve it, including . . . other lawyers," *see* Preamble [5], Ind. Professional Conduct Rules. But the defendant has failed to establish that, under all of the circumstances, such improper comments placed him in a position of grave peril to which he would not have been

subjected otherwise. *See Cooper*, 854 N.E.2d at 835; *Marcum*, 725 N.E.2d at 859-60. In *Marcum*, this Court held it could not conclude that comments such as "what this is, is a response to your nonsense," "Judge I guess we can move the jury out and we can do a quick evidence course here for [defense counsel]," and "He is trying to mislead this jury" affected the jury's verdict in light of the evidence as a whole. 725 N.E.2d at 858-60. Similarly, in *Brock v. State*, this Court found that the prosecutor's statement that defense counsel was "pulling the most low life tricks in this case," was improper but did not place the defendant in grave peril. 423 N.E.2d 302, 304-05 (Ind. 1981) (noting that defense counsel conceded it was a "rather insignificant" personal matter). This case is less egregious than *Marcum* and *Brock*; we find no prosecutorial misconduct.

9 N.E.3d 663, 669-70 (Ind. 2014) (last alteration in original).

[21] Here, the prosecutor's comments are no worse than those in *Ryan*, *Marcum*, or *Brock*. And, as in *Ryan*, the prosecutor made his comments in response to statements made during defense counsel's closing statement. In light of the record as a whole, we conclude that the prosecutor's comments did not place Coop in "a position of grave peril to which he would not have been subjected otherwise." *Id.* Accordingly, we conclude that no fundamental error occurred on this issue.

### Issue Three: Finding of Aggravating Factors

[22] We next consider Coop's argument that the trial court abused its discretion when it sentenced him. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Gomilla v. State*, 13 N.E.3d 846, 849 (Ind. 2014). An abuse of discretion occurs

if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). One way in which a trial court may abuse its discretion in sentencing is by providing reasons for the sentence that are improper as a matter of law. *Gomilla*, 13 N.E.3d at 849.

[23] Coop asserts on appeal that the trial court abused its discretion when it sentenced him because the court found as an aggravating circumstance that Coop had furnished his victims with sleep aids prior to molesting them. According to Coop, the trial court's reliance on this fact was improper as a matter of law because the jury acquitted Coop of two charges that had been elevated based on that fact and instead found Coop guilty of lesser-included offenses on those two counts. *See* Appellant's App. Vol. II at 73-74, 96-97.

[24] We cannot agree with Coop's characterization of the trial court's sentencing statement. In sentencing Coop, the court stated described the aggravating factors it considered significant as follows:

> the harm, injury, loss[,] or damage suffered by the victim of the offense was significant and greater than the elements necessary to prove the commission of the offense. The elements of the offense speak to the physical assault . . . to these children, but not to the emotional ones . . . they have suffered, and continue to suffer today and . . . undoubtedly will suffer in the future . . . . [B]oth girls are in counseling. . . . [B]oth have talked about being isolated today, the isolation that . . . they have. The changes that they've had in school. . . . [T]he changes they've had in their personal lives and they don't get the chance to have a normal

childhood. . . . [I]t's difficult to hear a thirteen year old girl tell me that she no longer even wants to try to have friends or to trust others . . . because of her experience with you. . . . [S]o I do find that to be a particular . . . aggravating factor . . . and do give it significant weight.

The other . . . aggravating factor[] . . . is the person was in a position having care, custody[,] or control of the victims . . . . I find this factor to be extremely significant as well. . . . I find that these girls were groomed. That you bought them electronics, iPhones, took them on outings . . . to the parks, to the walking bridge, bought them food, took them out to eat, bought them clothing, . . . and these are girls who, at that time, were lacking in a home structure. I feel that you carefully selected your targets and I think that's what the evidence clearly showed. That these were young girls seeking attention, seeking acceptance, seeking a safe place. . . . [B]ut instead, you provided them a lair and preyed upon their very innocence. *You gave young girls drugs so that you could ensure their compliance and their silence*. And I find that to be particularly aggravating.

Tr. Vol. 4 at 31-33 (emphasis added). Coop's takeaway from the court's statement that it improperly relied on Coop drugging his victims is incorrect. The aggravator in question was Coop's abuse of his position of trust. The court commented on Coop drugging his victims as only a small part of its lengthy explanation as to why it found the fact that Coop had violated his position of trust over the victims to be a significant aggravating circumstance. As such, the court did not abuse its discretion and rely on an improper aggravator.

### *Issue Four: Indiana Appellate Rule 7(B)*

[25]     Finally, Coop argues that his 120-year aggregate sentence is inappropriate. As we have explained:

> Indiana Appellate Rule 7(B) permits an Indiana appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). The principal role of appellate review is to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). A defendant must persuade the appellate court that his or her sentence has met the inappropriateness standard of review. *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007).

*Robinson v. State*, 61 N.E.3d 1226, 1228 (Ind. Ct. App. 2016).

[26]     Here, again, the trial court identified the following two aggravating factors: the emotional harm suffered by the victims and Coop's abuse of his position of trust over the victims. As a mitigating circumstance, the court noted that Coop had a minimal criminal history. The court then sentenced Coop to an aggregate term of 120 years, the maximum possible term for his convictions.

[27]     On appeal, Coop argues only that the 120-year sentence is inappropriate because he "is not the worst of offenders and did not commit the worst of offenses." Appellant's Br. at 43. More specifically, Coop asserts that his lack of a criminal history reflects well on his character and that he has a low risk of

reoffending. He also asserts that "there is nothing about how Coop committed the charged offenses that makes them more egregious than is already inherent in the nature of the offenses." *Id.* at 45. And Coop avers that consecutive sentences, in particular, are inappropriate here.

[28] We cannot agree. Coop's clear abuse of his position of trust over the children reflects his poor character. Further, the nature and circumstances of that abuse of his position of trust, and the ongoing emotional harm suffered by his victims, demonstrates that the nature of Coop's offenses was deplorable. And consecutive sentences are not inappropriate where there are multiple victims. *See Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003). Coop committed his offenses against multiple victims for more than a year and in the presence of other children. We cannot say that his 120-year sentence is inappropriate.

## *Conclusion*

[29] In sum, we affirm Coop's convictions and his sentence.

[30] Affirmed.

Bradford, J., concurs.

Riley, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Jerry Coop,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
22A01-1610-CR-2376

**Riley, Judge, concurring in part and dissenting in part.**

[31] Even though I agree with the majority's decision on the plurality of the issues raised by Coop, I respectfully dissent from its conclusion that Coop's sentence is not inappropriate in light of his offense and his character. I recognize that the trial court, as affirmed by the majority, sentenced Coop to the maximum aggregate sentence possible, and that maximum sentences should generally be reserved for the worst offenses and offenders. *See Bacher v. State*, 686 N.E.2d 791, 802 (Ind. 1997). However, as this court has previously explained,

> If we were to take this language literally, we would reserve the maximum punishment for only the singly most heinous crime…. We should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the

nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.

*Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*.

[32] The record reflects a very limited criminal history, only comprised of charges unrelated to the instant offenses. Coop had steady employment and was placed in the low risk category to re-offend. He did not brutalize or harm the victims in any manner not already inherent in the nature of the offenses. *See Fointno v. State*, 487 NE.2d 140, 148 (Ind. 1986) ("a rational sentencing scheme should punish more severely those who brutalize the victims of their crime."). Although the evidence indicated that Coop supplied the victims with sleeping aids, the jury acquitted him of the offenses that were elevated based upon this fact and he was only convicted of the lesser included offenses.

[33] While Coop's offenses are undeniably serious and warrant significant punishment, the lack of injury or use of physical force in the molestation of the victims demonstrated that the nature of the offense did not warrant consecutive sentences. *See Laster v. State*, 918 N.E.2d 428, 434 (Ind. Ct. App. 2009); *see also Tyler v. State*, 903 N.E.2d 463, 469 (Ind. 2009) (revising an enhanced sentence to the advisory term in part because there was no evidence that the defendant used physical force on his child molesting victims, nor were the children physically injured by the molestation). Even though our supreme court has repeatedly revised the consecutive sentences with regard to a single molestation victim, I do acknowledge that the second amended Counts I and II involve the

same victim, while the second amended Counts III and V relate to a different victim. *See, e.g., Harris v. State*, 897 N.E.2d 927 (Ind. 2008); *Monroe v. State*, 886 N.E.2d 578 (Ind. 2008). Accordingly, based on Coop's minimal criminal history, steady employment, and lack of physical force, I would revise his sentence to the advisory sentence for each offense, with Counts I and II running concurrently and Counts III and V running concurrently, and with both sets of Counts running consecutively to each other, for an aggregate sentence of 36 years.